INHABITANTS OF EDDINGTON *versus* INHABITANTS OF BREWER.

A married woman follows and has the settlement of her husband, if he has any in the State.

If he has none, her settlement is not lost or suspended by the marriage. A., before her marriage, had a settlement in the *westerly* part of a town. Immediately after her marriage, (which was with an unnaturalized foreigner, having no settlement in this State,) they removed to, and resided in the *easterly* part of the town; while residing there, that portion of the town was incorporated into a new town; — *held*, that her settlement was in the new town.

ON FACTS AGREED. From *Nisi Prius.*

ASSUMPSIT to recover for supplies furnished to Mrs. Sarah Ann Kavenagh and children, paupers, being the wife and children of Andrew Kavenagh. The only question was as to the settlement.

Mrs. Kavenagh was born and had her settlement in the town of Brewer, by derivation from her father, who had his settlement there on March 16, 1851. She, being then more than 21 years of age, married her present husband, he being an unnaturalized foreigner, having no settlement in this State.

Immediately after their marriage they removed into that part of Brewer now Holden, where they continued to reside until the spring of the year 1855. In the mean time the two children, for whose support this action was also brought, were born. In the spring of 1855, Kavenagh left his family, and they thereupon fell into want, and were supported for a while by the town of Holden.

On April 13, 1852, the town of Brewer was divided, and the easterly part incorporated as the town of Holden.

On March 16, 1855, a portion of the town of Brewer was annexed to Eddington, which portion embraced the farm and home of Mrs. Kavenagh's father, where she was born and had her home until her marriage. Mr. and Mrs. Kavenagh were then living in Holden, having their home there.

The paupers having called upon Holden for support, the overseers of the poor notified the overseers of Eddington, who, supposing the paupers were legally chargeable to that

town, caused them to be removed to Eddington. After their removal to Eddington, that town continued to furnish them with a support, for which this action is brought. If the legal settlement of said paupers is in Brewer, the defendants to be defaulted, otherwise a nonsuit to be entered.

*J. A. Peters*, for defendant.

Mrs. Kavenagh and children are paupers belonging to Holden. The case finds that, in 1852, Brewer was divided and the easterly portion of it incorporated into a town by the name of Holden. At the date of this incorporation the paupers lived and had their home in Holden, not as paupers, but supporting themselves. The Act of incorporation does not disturb the principles applied to such Acts of division in the general law, as a reference thereto will show. *Holden* v. *Brewer*, 38 Maine, 472; *Mount Desert* v. *Seaville*, 20 Maine, 341.

In the case at bar, the paupers were self supporting *bona fide* residents of Holden, having their home there voluntarily at the time of the division. The case of *Mount Desert* v. *Seaville*, 20 Maine, 341, has never been questioned or denied, to the extent of the principle involved, as far as the case now under consideration is concerned, and never can be. We come literally under the mode named in the latter clause of article 4, § 1, c. 32, R. S., which is the same as mode 6, named in the above case.

In 1852, when Holden became a town, the persons who afterwards became paupers actually "dwelt and had their homes in said new town." But even if the paupers do not belong to Holden, they do to Eddington and not to Brewer.

On March 16, 1855, a portion of Brewer was annexed to Eddington. That portion was the former home of Mrs. Kavenagh, where she had derived her settlement. On said March 16th, she and children had not become paupers.

Now, upon these facts, it is clear that if the paupers have not acquired a settlement in Holden, they must belong to Eddington, because they come within the literal language of article 4, pauper Act, and its only sensible construction.

The language is this, "upon the division of any town, every person having a legal settlement therein, but being absent at the time of such division, and not having gained a legal settlement elsewhere, shall have his legal settlement in that town wherein his last dwelling place shall happen to fall upon such division."

Here was a division of a town, because an annexation of territory to another town is the same thing, as far as the settlement is concerned, as a division. 1 Maine, 130; 16 Maine, 69; 13 Maine, 299.

Then there was, in the sense of the statute, "a division," and the persons had a settlement in the town divided, and were absent at the time of division or annexation, because they were then in Holden, and they had not gained a settlement elsewhere, unless it was in Holden; and, if so, Brewer cannot be made answerable, and their last dwelling place and home in said Brewer was in that part of it which became Eddington. *Smithfield* v. *Dearborn*, 19 Maine, 386; *St. George* v. *Deer Isle*, 3 Maine, 390.

*A. W. Paine*, for plaintiffs.

1. Have the paupers gained any new settlement either in Holden or Eddington; for, if not, her old settlement in Brewer still remains.

Her marriage to an alien having no settlement in this State did not affect her settlement before existing. R. S., c. 32, § 1. But *alienage* would not prevent her husband from acquiring a settlement in any of the modes provided by statute, in the same manner as a *citizen*. *Knox* v. *Waldoboro'*, 3 Greenl. 455.

After marriage the wife can gain no settlement separate or different from that of her husband, nor one independent of her husband; but while the marital relation exists her settlement is wholly dependent upon his, so far as any change of settlement or any new settlement is in question. *Hallowell* v. *Gardiner*, 1 Greenl. 33; *Jefferson* v. *Litchfield*, 1 Greenl. 196; *Augusta* v. *Kingfield*, 36 Maine, 235.

The case, then, is one of "a new town composed of a part of one * * * old incorporated town."

The provision of the statute applicable to that case is, that " every person legally settled in any town of which such new town is composed, shall have the same rights in such new town in relation to settlement, whether incipient or absolute, as he would otherwise have had in the old town where he dwelt."

The husband was then living in Holden, but he had no legal settlement there. He had an incipient settlement in Brewer, gained by his residence there one year. This incipient settlement followed him into Holden, and if he had remained there four years longer, his settlement would have become absolute. The pauper's settlement in Brewer, then, was not affected by the division, and the incorporation of Holden.

2. After the incorporation of Holden, and while Kavenagh and family were living in that town, a portion of Brewer was annexed to Eddington, including Kenney's farm. This annexation was in effect like the incorporation of a new town. *Smithfield* v. *Belgrade*, 19 Maine, 387, and cases *passim*.

In order to give a settlement in such new town, or town to which such annexation is made, it is necessary that the person should actually dwell and have his home upon the territory annexed, at the time of annexation, and also have his settlement in the former town. *Hallowell* v. *Bowdoinham*, 1 Greenl. 129; *New Portland* v. *Rumford*, 13 Maine, 299; *New Portland* v. *New Vineyard*, 16 Maine, 69.

Here the Kavenagh family were not at the time living on the territory annexed; and the husband had no settlement in Brewer, from which territory the annexed town was taken. For this two-fold reason, then, the paupers did not by the annexation gain a settlement in Eddington.

If it be contended that the annexation of the territory on which the pauper wife had had her settlement carried her settlement with it, I reply, —

1st. That such a result would be in direct violation of the statute provision, that "her settlement at the time of marriage

shall not be lost by the marriage." Her settlement at the time of marriage was in Brewer, and, if "not lost," it remains there still. If it be now in Eddington, then her settlement in Brewer is "lost."

2d. If it should have the effect to carry her settlement, it most certainly could not carry his there, inasmuch as he never had any settlement in Brewer at all, and never lived at the time of annexation, or at any other time, on the annexed tertory. The result would, in that case, be to separate the husband and wife, by giving them different settlements, and also to make her settlement to change from one town to another without any change in his. In both respects the result would be in contravention of the well settled principle of law, as stated in *Augusta* v. *Kingfield*, 36 Maine, 235.

3d. The question of settlement, under the clause of the statute under examination, does not in any respect depend upon the question of territory.

GOODENOW, J.—The case finds that Mrs. Kavenagh had her settlement in the town of Brewer, by derivation from her father. On the 16th of March, 1851, she being then more than 21 years of age, married her present husband, Andrew Kavenagh, he being an unnaturalized foreigner, having no settlement in this State.

Immediately after their intermarriage they removed into that part of Brewer, now Holden, where they continued to reside until the spring of the year 1855, and until after the incorporation of Holden, on the 13th of April, 1852, which was composed of the easterly part of the town of Brewer.

A married woman shall always follow and have the settlement of her husband, if he have any within this State; otherwise, her own at the time of marriage, if she then had any, shall not be lost or suspended by the marriage.

Mrs. Kavenagh was residing in that part of Brewer which was incorporated as the town of Holden, and had a settlement there at the time of the incorporation. By operation of law her settlement was transferred from Brewer to Hol-

den; and her two children follow and have her settlement, their father having none within the State.

According to the agreement of the parties—

*A nonsuit must be entered.—Costs for defendants.*

TENNEY, C. J., and HATHAWAY, APPLETON, and MAY, J. J., concurred.